```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Donna McKee o.b.o. George McKee,  :

     Plaintiff,              :

  v.                            :     Case No. 2:14-cv-609

                                :     JUDGE JAMES L. GRAHAM
Commissioner of Social Security,    Magistrate Judge Kemp

     Defendant.            :

<u>REPORT AND RECOMMENDATION</u>

### I. <u>Introduction</u>

Plaintiff, Donna McKee, the surviving spouse of George McKee, filed this action seeking review of a decision of the Commissioner of Social Security denying Mr. McKee's applications for disability insurance benefits and supplemental security income. Those applications were filed on October 31, 2011 and October 17, 2011, respectively, and alleged that Plaintiff became disabled on October 7, 2011.

After initial administrative denials of his claim, Mr. McKee was given a hearing before an Administrative Law Judge on November 30, 2012. In a decision dated April 2, 2013, the ALJ denied benefits. That became the Commissioner's final decision on April 30, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on August 21, 2014. Plaintiff filed her statement of specific errors on October 20, 2014, to which the Commissioner responded on December 23, 2014. No reply brief has been filed, and the case is now ready to decide.

### II. <u>Mr. McKee's Testimony at the Administrative Hearing</u>

Mr. McKee, who was 53 years old at the time of the administrative hearing and who had a high school education with some college work, testified as follows. His testimony appears

at pages 121-134 of the administrative record.

Mr. McKee said that he last worked the day before he went to the hospital and was diagnosed with an aneurysm, COPD, and cardiac arrest.  He thought he could walk 20 yards on a good day without becoming short of breath.  He retained fluid and was told he was more susceptible to pneumonia.

In a typical day, Mr. McKee would get up early, take medicine, and go back to bed in the early afternoon.  He was able to get up again for a few hours in the evening before going back to bed.  He spent the rest of his time sitting down, getting up only occasionally to stretch.  He could lift a gallon of milk.  It was hard to climb stairs due to his COPD and he had some balance problems.  He rarely left the house.  He worried about driving due to angina attacks and also vision problems caused by diabetes.  Mr. McKee did no household or yard chores.  He used a CPAP machine to sleep.

### III.  The Medical Records

The medical records in this case are found beginning on page 334 of the administrative record.  The Court will summarize only those records pertaining to the claim that Mr. McKee's COPD met the requirements of Section 3.02A of the Listing of Impairments, because that is the only issue raised in the statement of errors.

Mr. McKee was admitted to Grady Memorial Hospital in October, 2011.  His discharge diagnoses included congestive heart failure, bronchitis, hypertension, and an aneurysm in one of his coronary arteries.  (Tr. 338).  He went to the hospital due to severe shortness of breath.  An echocardiogram revealed depressed left ventricle function with an ejection fraction of only 30-35%.  A respiratory examination done in the emergency room on the date of his admission was normal.  (Tr. 344).

Dr. Harrold was asked to consult during Mr. McKee's hospital stay.  He noted that Mr. McKee had a significant smoking history

and that pulmonary function tests showed a moderate obstructive lung defect with significant air trapping. (Tr. 349-51). The test results, found at Tr. 375-77, showed Mr. McKee's height to be 65 inches and his FEV-1 as 1.45 before bronchodilator use and 1.53 afterwards.

There are a large number of records from Mr. McKee's primary care physician's office. They repeat the diagnosis of COPD with the description from his hospital records and state that he was following up with Dr. Harrold for treatment. A note from January 20, 2012 indicated that Mr. McKee was walking on a treadmill two or three times a week without exertional symptoms. (Tr. 446). An earlier note, made shortly after his hospitalization, showed that he was denying shortness of breath on exertion and was trying to walk daily. (Tr. 456).

Another pulmonary function test was done on April 3, 2012. It showed Mr. McKee's height as 66 inches. His FEV-1 was 1.35 before bronchodilation and 1.54 afterwards. Dr. Harrold read the test results and reached the same conclusions as he did the previous October, except that he characterized Mr. McKee's COPD as severe rather than moderate. (Tr. 505-07).

A functional capacity evaluation was performed in July, 2012 at the request of Delaware Primary Care. During the intake process, Mr. McKee reported that he became short of breath on exertion. He described his ability to walk as "Not very long." It appears that the testing was discontinued for medical reasons, and most of Mr. McKee's physical abilities were not assessed. (Tr. 572-82). Later that same month, however, Mr. McKee apparently told Dr. Nicholson, his cardiologist, that he had no exertional dyspnea, and Dr. Nicholson encouraged him to exercise more, at least by walking daily. (Tr. 607-08).

There was additional evidence submitted to the Appeals Council, but it was not considered by the ALJ and did not include

any pulmonary function studies. Plaintiff does not refer to these records in her Statement of Errors so they will not be summarized here.

### IV. The Vocational Testimony

A vocational expert, Dr. Robinson, testified at the administrative hearing. She said that Mr. McKee's past work as a welder was heavy and skilled, and that he did not appear to have any other past relevant work.

Dr. Robinson was asked questions about a hypothetical person with Mr. McKee's age, education, and work experience who could lift 20 pounds occasionally and ten pounds frequently, could stand and walk for six hours in a workday, sit for the same time period, could frequently climb ramps and stairs, and could only occasionally climb ladders, ropes, and scaffolds. The person also had to avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases and poor ventilation. She testified that such a person could not work as a welder but could do some unskilled light jobs like garment sorter, packer, and assembler. Those same jobs could be done by a person who could climb stairs and ramps only occasionally, could never climb ropes, ladders, or scaffolds, could balance, stoop, kneel, and crawl only occasionally, and who also had to avoid extreme heat in addition to the other environmental matters previously mentioned.

Lastly, Dr. Robinson said that if someone could only stand and walk for two hours in a workday and sit for only one hour, and had other restrictions as well, the person could not do Mr. McKee's past work. Additionally, there were no other jobs available to such a person. (Tr. 134-37).

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 102-111 of the administrative record. The important findings in that decision are as follows.

-4-

The Administrative Law Judge found, first, that Mr. McKee met the insured status requirements of the Social Security Act through March 31, 2012.  Next, he found that Mr. McKee had not engaged in substantial gainful activity since his alleged onset date of October 7, 2011.  Going to the second step of the sequential evaluation process, the ALJ determined that Mr. McKee had severe impairments including coronary artery disease, history of episode of congestive heart failure, aneurysm in right coronary artery, chronic obstructive pulmonary disease, hypertension, obstructive sleep apnea, and obesity.  At step three, the ALJ found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).  That is the finding which Plaintiff is challenging here.

Moving to step four of the sequential evaluation process, the ALJ found that Mr. McKee had the residual functional capacity to perform a limited range of light work, with some restrictions on balancing stooping, kneeling, crawling, and climbing ramps and stairs; a total restriction on climbing ropes, ladders, and scaffolds; and a need to avoid concentrated exposure to extremes of temperature and respiratory irritants.  The ALJ found that, with these restrictions, Mr. McKee could not do his past work.  However, he also determined that Mr. McKee could do the jobs identified by the vocational expert, including garment sorter, packer, and assembler.  The ALJ further found that such jobs existed in significant numbers in the local, state, and national economies.  Consequently, the ALJ concluded that Mr. McKee was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises only one issue: that the ALJ should have found Mr. McKee to be disabled under Section 3.02A of the Listing of Impairments.  That

issue is evaluated under the following legal standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

<u>Listing Section 3.02A</u>

Section 3.02 of the Listing of Impairments is entitled "Chronic pulmonary insufficiency."  It reads:

> A. Chronic obstructive pulmonary disease, due to any cause, with the FEV1 equal to or less than the values specified in table I corresponding to the person's height without shoes. (In cases of marked spinal deformity, see 3.00E.);

-6-

Table I

| Height without shoes (centimeters) | Height without shoes (inches) | FEV1 equal to or less than(L, BTPS) |
|---|---|---|
| 154 or less | 60 or less | 1.05 |
| 155-160 | 61-63 | 1.15 |
| 161-165 | 64-65 | 1.25 |
| 166-170 | 66-67 | 1.35 |
| 171-175 | 68-69 | 1.45 |
| 176-180 | 70-71 | 1.55 |
| 181 or more | 72 or more | 1.65 |

The ALJ's decision states that he "carefully considered" various sections of the Listing, including section 3.02.  He did not, however, explain his conclusion that Mr. McKee's COPD did not satisfy section 3.02A.  (Tr. 106).

Plaintiff's argument is as follows.  The April, 2012 test was done in accordance with the parameters of the Listing.  It produced a qualifying score - an FEV-1 of 1.35 for someone 66 inches tall.  The ALJ made no mention of this study and did not explain why, in his opinion, it did not satisfy Listing 3.02A.  Therefore, a remand is necessary.

The Commissioner's response is that both of the post-bronchodilator readings exceed the threshold showing for this section, so that there was no qualifying test score.  Additionally, even if the lower score is used, because the ALJ found that Mr. McKee was only 65 inches tall, he still did not qualify.  According to the table set forth above, a score of 1.25 would be needed for someone of that height to meet the Listing.

The Court is somewhat hampered in its review by the complete absence of any explanation given by the ALJ as to why the test score on which Plaintiff bases her argument was deemed not to meet the requirements of Section 3.02A.  However, this Court has

held that

> there is no requirement that the ALJ provide any specific level of articulation about the step three analysis. See Bledsoe v. Barnhart, 165 Fed.Appx. 408, 411 (6th Cir. Jan. 31, 2006) (noting that the "argument that the ALJ should spell out the weight he gave to each factor in his step three analysis is not supported by case law"); Lee v. Comm'r of Social Security, 2013 WL 6116814, *7 (N.D. Ohio Nov. 20, 2013) ("The court may look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis"). Further, at step three, the claimant has the burden of showing that he or she has an impairment of Listing severity; "[t]he burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant." Miller v. Comm'r of Social Security, 848 F.Supp.2d 694, 708 (E.D. Mich. 2011), citing Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001).

Consequently, the sole dispositive issue in this case is whether substantial evidence supported the ALJ's step three finding.

The Commissioner's argument that Mr. McKee was properly determined to be only 65 inches tall is not addressed in Plaintiff's Statement of Error. There are multiple references to Mr. McKee's height in the record in addition to the pulmonary function test results, and he was variously described as either 65 or 66 inches tall. None of the measurements indicate whether his height was with shoes or without. The Commissioner could properly have resolved this factual issue in favor of the shorter height, although, again, some rationale for choosing one height over the other would have been helpful to assist the Court's review. Nevertheless, this argument does provide a basis for affirming the ALJ's decision.

As to which value from the studies should be used, some courts have questioned whether the Listing of Impairments directly answers this question. See, e.g., Belton v. Astrue, 2012 WL 1354031, *4 (W.D. Va. Apr. 16, 2012), adopted and affirmed 2012 WL 4459033 (W.D. Va. May 30, 2012)(the regulations

-8-

are "a bit ambiguous on whether pre-bronchodilator or post-bronchodilator test results are to be given primary importance ..."). However, most courts, including Belton, have interpreted certain language in Section 3.00E ("[t]he highest values of the FEV1 ... should be used to assess the severity of the respiratory impairment") to refer to the higher of the pre-bronchodilator and post-bronchodilator values. See, e.g., Eskew v. Astrue, 2010 WL 4481774, *10 (N.D. Ill. Nov. 1, 2010), vacated and remanded on other grounds 462 Fed. App'x 613 (7th Cir. Dec. 2, 2011)("Plaintiff insists that the ALJ was required to use the prebronchodilator FEV1 value of 1.15, which was low enough for her to meet Listing 3.02A. The regulations, however, say otherwise"); Dees v. Colvin, 2015 WL 133726, *3 (S.D. Ind. Jan. 9, 2015)(holding that when the post-bronchodilator result did not meet the Listing, "the ALJ correctly ignored the pre-bronchodilator result..."); Sargent v. Colvin, 2014 WL 792154, *3 (D. Or. Feb. 23, 2014)("[u]nder the plain language of this listing, disability determinations are made by looking at the highest FEV value, including those obtained after a bronchodilator ...").

   This Court agrees that the language of the regulation could be clearer; if it meant that the post-bronchodilator result was the more significant one, it could have used that language. On the other hand, the Court also agrees with the District Judge's decision in Belton that when the record has both qualifying and non-qualifying test results, even pre-bronchodilator, the higher result is to be used. Here, the result obtained while Mr. McKee was hospitalized for shortness of breath is not a qualifying result, and would not have qualified even if his height was 66 inches and not 65 inches. Under those circumstances, there is substantial support for the ALJ's finding that the criteria to prove disability under Section 3.02A were not satisfied. Since that is the only issue Plaintiff has raised, her Statement of

Errors should be overruled.

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp  
United States Magistrate Judge